IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALFREDO DURANT-IRIZARRY<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CIVIL NO.: 14-1444 (MEL) |

**OPINION AND ORDER**

I.  **PROCEDURAL AND FACTUAL BACKGROUND**

Alfredo Durant-Irizarry ("plaintiff" or "claimant") was born in December of 1969, has a high school education with postsecondary training in industrial sewing, and from 1999 through 2010 was employed as a sewing machine operator. (Tr. 38-41.) On March 2, 2011, plaintiff applied for disability insurance benefits ("DIB") alleging an onset date of March 25, 2010. (Tr. 14.) Plaintiff was insured until June 30, 2015. (Tr. 15.) On July 22, 2011, his claim was initially denied, and on January 20, 2012, the claim was denied again upon reconsideration. (Tr. 14.) On February 13, 2012, plaintiff filed a written request for a hearing, which was granted. (Tr. 14.) On January 17, 2013, plaintiff, represented by counsel, appeared and testified at a hearing held in Mayagüez, Puerto Rico. (Tr. 14.) Dr. Marieva Puig, a Vocational Expert ("VE"), testified by phone. (Tr. 14.) On March 8, 2013, the administrative law judge ("ALJ") determined that plaintiff was not disabled within the meaning of sections 216(i) and 223(d) of the Social Security Act. (Tr. 27). On April 27, 2013, plaintiff requested that the Appeals Council review the ALJ's decision. (Tr. 6-7.) On April 4, 2014, plaintiff's request was denied, rendering the ALJ's decision the final decision of the Commissioner of the Social Security Administration ("Commissioner"),

subject only to judicial review. (Tr. 1.) Plaintiff brought this action on June 3, 2014, pursuant to the Social Security Act 42 U.S.C. § 405(g) to appeal the final decision of the Commissioner denying him disability insurance benefits. ECF No. 1. Defendant filed an answer to the complaint and a certified transcript of the administrative record. ECF Nos. 10-11. Plaintiff and the Commissioner filed supporting memoranda of law. ECF Nos. 16-17.

## II.   STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence *de novo*. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

An individual is deemed to be disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under steps one through four of the disability review process, the plaintiff has the burden to prove that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has

carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

#### A.    Physical Health Evidence

Plaintiff has several physical health issues that have been extensively documented beginning in 1998, including issues of the back, neck, and shoulder; carpal tunnel syndrome; reactive airway disease; obstructive sleep apnea; and obesity. In 1998 plaintiff complained of back pain and muscle cramps, for which he sought treatment on July 7, 1998 with general practitioners Dr. Jorge Irizarry and Dr. Wilma Caro-Irizarry ("Dr. Wilma Caro"). (Tr. 162-63, 174.) During a follow-up visit on November 17, 1998 plaintiff reported that his back was feeling better. (Tr. 162-63, 174.)

There is a gap in the record until January 16, 2007, when an x-ray examination revealed that plaintiff had a mild compression fracture at the T11 vertebra and degenerative spondylosis. (Tr. 195.) More than a year and a half later on August 27, 2008, Drs. Jorge Irizarry and Wilma Caro, analyzing the findings of an MRI, confirmed plaintiff's compression fracture at the T11 vertebra in addition to diagnosing degenerative spondylosis and a bulging annulus at the L2-L3 level. (Tr. 193).

---

[1] An individual's RFC is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

On April 15, 2009, Drs. Jorge Irizarry and Wilma Caro performed an x-ray examination that revealed mild osteoarthritis in plaintiff's right shoulder. On August 5, 2009, plaintiff returned complaining of back pain due to a lumbar fracture and was referred to a physical therapist. (Tr. 178.) On October 19, 2009, pneumologist Dr. Jesse Romeu performed a polysomnographic study that revealed plaintiff suffered from severe obstructive sleep apnea. (Tr. 310-14.) Dr. Jesse Romeu noted that plaintiff weighed 310 pounds and recommended that plaintiff start a strict weight reduction diet and consider bariatric surgery as treatment for his sleep apnea. (Tr. 310, 313.) On November 5, 2009, Dr. Jesse Romeu signed a letter addressed "[t]o whom it may concern," opining that plaintiff had reactive airway disease and could not be exposed to fumes and chemicals. (Tr. 570.) On November 30, 2009, plaintiff attended physical therapy where his back and neck were treated. (Tr. 151.)

Plaintiff testified at the hearing before the ALJ that on March 25, 2010, the back of a chair he was sitting on broke, causing him to fall and hit his back on a support stand, fracturing his spine between the T11 and T12 vertebrae. (Tr. 40-41). Two weeks later, on April 8, 2010, a doctor at the State Insurance Fund ("SIF") diagnosed plaintiff with carpal tunnel syndrome and prescribed treatment with physical therapy and acupuncture. (Tr. 259.) The treatment note from April 8, 2010, states generally that his "pain continues," but does not specifically mention his back. Id. A treatment note from the SIF, dated July 22, 2010, indicates that claimant "continue[d] with numbness and pain in his hand, specifically the left one," but also does not mention claimant's back. (Tr. 256.) A treatment note from the SIF dated October 7, 2010, however, states that claimant reported "that he ha[d] numbness in his hands, and his lower back is still bad." (Tr. 253.) Claimant's treatment note from the SIF dated December 23, 2010, indicates that the pain in his hands persisted. (Tr. 249.)

On April 16, 2011, treating physician Dr. Jorge Irizarry reported that plaintiff has several functional limitations, including that he can sit for no more than 30 minutes at a time before needing to get up, that he can stand for no more than 20 minutes before needing to sit down or walk around, and that he can sit and stand for a total of about 2 hours in an 8-hour workday. (Tr. 217.) He also indicated that plaintiff required a cane to assist with movement.[2] (Tr. 218.) Dr. Jorge Irizarry's report does not mention obesity. (Tr. 214-19.) On June 9, 2011, plaintiff visited internal medicine specialist Dr. Fernando Torres complaining of lower back pain and was diagnosed with C5-C6 and lumbar anterolateral marginal osteophytes and a T12 compression fracture. (Tr. 620.) Dr. Torres also performed an x-ray examination of plaintiff's right shoulder that revealed degenerative spondylosis and muscle spasms of the cervical spine, degenerative spondylosis of the lumbosacral spine, and a narrowing of the acromioclavicular and glenohumeral joints. (Tr. 617-626.) At the same visit, however, Dr. Torres reported that plaintiff had full range of motion in all extremities and joints. (Tr. 624.) Nonetheless, Dr. Torres opined that plaintiff should "[a]void repetitive job task[s] over shoulder line. Claimant is unable to do regular work." (Tr. 620.) Dr. Torres also diagnosed plaintiff with obstructive sleep apnea and that plaintiff was morbidly obese: he weighed 325 pounds and had a body mass index ("BMI") of 45. (Tr. 620.)

On June 15, 2011, Dr. Wilma Caro diagnosed plaintiff with bilateral carpal tunnel syndrome. (Tr. 222.) On July 19, 2011, medical consultant Dr. Cindy Ramírez Pagán, a non-examining physician, reviewed plaintiff's records and opined that plaintiff's limitations were consistent with light work with an ability to stand and walk for four hours. (Tr. 652-61.) Surgery was performed on December 1, 2011 for the release of the carpal tunnel syndrome in plaintiff's

---

[2] Although treating physician Dr. Jorge Irizarry reported plaintiff requiring a cane, examining internal medicine specialist Dr. Torres' and treating physiatrist Dr. Padilla both indicated that plaintiff did not require a cane. (Tr. 290-93, 622.)

left hand. (Tr. 281.) After the surgery, plaintiff continued to complain of pain, numbness, and swelling, and a limited range of motion in his left hand. (Tr. 264-84.) On April 16, 2012, plaintiff complained of bilateral hand pain and paresthesia with the pain radiating to both upper extremities. (Tr. 288.)

At the hearing presided by the ALJ on January 17, 2013, plaintiff complained of his bilateral carpal tunnel syndrome. (Tr. 42-43.) He also testified that he experienced back pain that limited his sitting to between twenty and thirty-five minutes, and standing to seven minutes at a time. (Tr. 38.) He testified that he was five feet and eleven inches tall and weighed 328 pounds, but that his normal weight was 240 pounds and that he last weighed that amount approximately one and a half years earlier.[3] (Tr. 38.)

### B.     Mental Health Evidence

Beginning on April 30, 2010, psychiatrist Dr. Erick Medina treated claimant for depression and a panic disorder, prescribing him Prozac, Clonzepan, and Buspar. (Tr. 205-15; 599-604.) On May 14, 2010, claimant indicated to Dr. Medina that he was feeling "much better" and Dr. Medina noted that claimant's response to treatment was good. (Tr. 601.) On June 21, 2010, claimant indicated that he had not experienced additional panic attacks. (Tr. 600.) The treatment note from that visit with Dr. Medina indicates that claimant had a good mood, was calm and cooperative with a normal speech and no cognitive difficulties. Id. On January 26, 2011, claimant reported to Dr. Medina that he was feeling depressed and anxious. (Tr. 599.) Dr. Medina reported that during that visit claimant was well-groomed, was calm and cooperative, had normal speech, and an intact thought process. Id.

---

[3] Plaintiff's testimony that he weighed 240 pounds a year and a half earlier is in tension with previously cited medical evidence reporting that he weighed over 300 pounds in 2009 and 325 pounds in 2011.

On June 15, 2011, Dr. Armando Caro, a psychiatrist and consultant examiner, evaluated claimant, diagnosing him with a moderate recurrent major depressive disorder. (Tr. 627.) Claimant indicated to Dr. Caro that he has panic attacks, associated with palpitations, sweating of his hands, shortness of breath and feelings of impending doom. Id. Claimant also reported that he began feeling depressed following the worsening of his physical condition. Id. Dr. Caro's report states that claimant had never been admitted to a psychiatric hospital and had never attempted suicide. Id. Dr. Caro concluded that "claimant's capacity for social interaction is impaired based on [his] interaction with the interviewer," that claimant has the capacity to handle funds, and that his prognosis is poor based on his physical condition. (Tr. 628.)

IV.   ANALYSIS

Plaintiff's main argument is that the ALJ failed to give adequate consideration to plaintiff's obesity in relation to his other impairments in formulating plaintiff's RFC assessment as required by Social Security Regulation 02-1p, which states that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." ECF No. 16, at 4. Referencing Social Security Regulation 02-1p, plaintiff states that the ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments, but rather must evaluate each case based on the information in the case record." ECF No. 16, at 11.

Social Security Regulation 02-1p, when read in its entirety, does not advise the ALJ that obesity will always increase the effects of a claimant's other impairments. Rather, Social Security Regulation 02-1p plainly states that in some cases "the combined effects of obesity with other impairments *can* be greater than the effects of each of the impairments considered separately" (emphasis added), but it is not necessarily true that the effects of obesity combined

with other impairments *will* always be greater. In order for the ALJ to conclude that the combined effects of a claimant's obesity with his other impairments is greater, evidence in the medical record must support such a conclusion. Social Security Regulation 02-1P, 2002 WL 34686291 at *6 ("Obesity in combination with another impairment *may or may not* increase the severity or functional limitations of the other impairment . . . . We will evaluate each case based on information in the case record.") (emphasis added). "In the context of judicial review of the ALJ's decision, [plaintiff] ha[s] the burden of showing specifically how the obesity, in combination with other impairments, limit[s] her ability to a degree inconsistent with the ALJ's RFC determination." Smith v. Astrue, 639 F. Supp. 2d 836, 847 (W.D.Mich. 2009). Plaintiff must do more than merely introduce evidence of his obesity; rather, he must specifically show how obesity affects his abilities needed for gainful employment. See id. at 847. In other words, "[i]t [is] not enough . . . to argue that the evidence shows that [plaintiff] suffers from some of the usual effects of morbid obesity." Id. at 847.

Plaintiff's argument that the ALJ ignored the combined effects of his obesity with his other impairments is unfounded. In her decision the ALJ explained,

> the undersigned has considered the impact obesity has on limitation of function including the claimant's ability to perform routine movement and necessary physical activity within the work environment. The undersigned concludes that the claimant's obesity contributes to his functional limitations but does not result in limitations in excess of the [RFC] stated herein.

(Tr. 23.) The ALJ's analysis is enough to satisfy the ALJ's burden of considering a claimant's obesity pursuant to Social Security Regulation 02-1p. See, e.g., Sleight v. Commissioner of Social Sec., 896 F. Supp. 2d 622 (E.D.Mich. 2012) (holding that the ALJ's analysis would be sufficient if it ". . . simply advise[d] the claimant and the Court along the following lines: 'Because the claimant has not identified specifically how her obesity limits her functionally, and

8

because no 'assumptions' about obesity may be drawn under S.S.R. 02–1p, the undersigned concludes that the claimant's obesity does not affect the step three, four, or five analysis.'"). In the present case, the ALJ goes at least as far as Social Security Regulation 02-1p requires.

In the formulation of plaintiff's RFC the ALJ states that, "based on claimant's complaints, the obesity and the sleep apnea, the undersigned has granted great weight to the opinion of Dr. Ramírez Pagán that claimant's standing and walking is limited to 4 hours in an 8 hour workday." (Tr. 24.). Claimant does not explicitly argue that the ALJ did not give the appropriate weight to the opinions of his treating physician, Dr. Jorge Irizarry—in fact, his memorandum of law does not make any argument regarding the ALJ's handling of Dr. Jorge Irizarry's opinions. However, to the extent, if at all, that claimant implies as such in arguing that the ALJ failed to properly assess plaintiff's RFC is light of his obesity, his argument would be unavailing. Dr. Jorge Irizarry opined that claimant could sit and stand for about 2 hours in an 8-hour workday, which is somewhat more restrictive than Dr. Ramírez's findings regarding claimant's functional limitations. (Tr. 217.) The ALJ declined to give weight to the limitations listed in his April 16, 2011 report, explaining that "they are conclusory and unsupported." (Tr. 24.) To be given controlling weight, the treating physician's opinion must be "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quinones v. Astrue, 11-1618, 2012 WL 1502725, at *1 (1st Cir. May 1, 2012) (quoting 20 C.F.R. § 404.1527(d)(2)). Dr. Jorge Irizarry's report is not accompanied by any medical tests that support his opinions. Although the administrative record contains treatment notes from claimant's visits with him (Tr. 555-98.), the majority of his notes are from prior to the alleged onset date of claimant's disability. The three brief entries dated after the alleged onset date, on May 24, 2010, June 16, 2010, and November

8, 2010 (Tr. 558-59.), do not reveal that Dr. Jorge Irizarry performed any clinical or diagnostic tests to support his findings regarding the limitations he found in the April 16, 2011 questionnaire. Furthermore, the questionnaire specifically inquired, "[w]hat is the earliest date the description of symptoms and limitations on the questionnaire applies?" (Tr. 219.) Dr. Jorge Irizarry responded "today at present." (Tr. 219.) The administrative record does not contain any treatment notes written by Dr. Jorge Irizarry or medical testing ordered by him after the November 8, 2010 entry that might substantiate his findings that he indicated were applicable beginning on April 16, 2011, the date he completed the questionnaire. Thus, given that Dr. Jorge Irizarry's opinions regarding claimant's functional limitations were not well-supported by medically acceptable clinical and laboratory diagnostic techniques, the ALJ did not err in declining to follow Dr. Jorge Irizarry's conclusions in formulating plaintiff's RFC.

The ALJ's RFC assessment of "light work" is also consistent with plaintiff's testimony regarding his daily activities. Plaintiff testified at the hearing before the ALJ that he prepares breakfast, watches television, cooks light meals, sometimes washes dishes, goes grocery shopping with his wife, and sometimes helps his daughter with homework. (Tr. 51-54.) In considering plaintiff's testimony that he is limited to standing for up to seven minutes and walks with a cane, the ALJ gave greater weight to Dr. Torres' findings that plaintiff did not need a cane as was prescribed, and that plaintiff had a normal gait and station. (Tr. 23.) The ALJ also considered Dr. Padilla's note that plaintiff did not require an assistive device, such as a cane, for walking. (Tr. 23.) Furthermore, the ALJ explained that since Dr. Torres' examination did not reveal limitations on standing, walking, or the need to change positions, with a finding of "5/5" strength, and normal range of motion in the hip, knees, shoulders, elbow, and ankles, and some limitations on range of motion of the lumbar spine, that the RFC assessment of "light work" is

consistent with the medical record. (Tr. 23.) The ALJ's decision traces her analysis and review of the medical record, showing that she considered and weighed all the available evidence, and did not ignore medical evidence of plaintiff's functional limitations in determining the plaintiff's RFC.

The ALJ also sufficiently explained why she gave no weight to Dr. Torres' opinion that plaintiff should avoid job tasks above the shoulder and that he was unable to do regular work, but yet gave great weight to Dr. Torres' reports of plaintiff's range of motion in his extremities. Plaintiff appears to imply that that the ALJ was bound to accept Dr. Torres's conclusions if she agreed with his findings. ECF No. 16, at 14. The social security regulations, however, do not contain such a requirement. Rather, the ALJ may reject a physician's findings or determinations where they do not comport with the physician's own findings or with other medical evidence in the record. See Nguyen, 172 F.3d at 35; see also Mercado v. Comm'r of Social Sec., 767 F.Supp.2d 278, 285 (D.P.R. 2010). In deciding to weigh Dr. Torres' findings differently, the ALJ specifically noted that Dr. Torres' functional conclusions about plaintiff's ability to work are contradicted by his own examination, which found plaintiff had full range of motion of the shoulders and joints. (Tr. 22, 24.) Furthermore, Dr. Torres' opinion regarding plaintiff's functional limitations was unexplained. For example, Dr. Torres opined that plaintiff was unable to perform "regular work," but never explained what he defined regular work to be. Moreover, statements that a claimant is unable to work are never entitled to controlling weight, even if made by a treating physician. 20 C.F.R. § 416.927(e)(1); S.S.R. 96-5p. Despite the contradiction in Dr. Torres' report and its general vagueness, the ALJ nonetheless limited plaintiff to "light work" in the RFC assessment. (Tr. 20.) Light work by definition, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." 20

C.F.R. § 404.1567(b). In sum, the ALJ did not ignore evidence of shoulder limitations. Rather, she judged the credibility of conflicting medical reports, as is her mandate.

Plaintiff also argues that the ALJ incorrectly formulated the RFC assessment by not including limitations based on Dr. Romeu's assessment that plaintiff has reactive airway disease and, as a result, plaintiff could not be exposed to fumes or chemicals. ECF No. 16, at 15. This argument is unavailing. Dr. Romeu's "assessment" regarding plaintiff's reactive airway disease consists of a letter dated November 5, 2009 that states that claimant "cannot expose to fumes and chemicals to avoid exacerbation of his condition." (Tr. 203.) As a preliminary matter, the letter is dated prior to the alleged onset date of claimant's disability, thus the ALJ was entitled to disregard it due to the fact that it was rendered outside of the relevant period. Furthermore, the opinion is not supported by clinical and laboratory diagnostic techniques. Dr. Romeu did perform a sleep study on claimant on October 19, 2009, but the study indicates that claimant had obstructive sleep apnea and does not mention reactive airway disease or the need for claimant to avoid exposure to chemicals and fumes. (Tr. 311.) As the ALJ noted, the administrative record contains spirometry testing; however, the results were within normal limits. (Tr. 24, 307.) Bearing in mind that Dr. Romeu rendered his opinion that claimant should avoid exposure to chemicals and fumes prior to the alleged onset date of claimant's disability and that he did not support his opinion with clinical and laboratory diagnostic techniques, the ALJ did not ignore substantial evidence in not including a respiratory limitation in the RFC assessment.

Plaintiff also argues the ALJ must have been uncertain of how plaintiff's obesity affected his functional limitations, and did not develop the record sufficiently to answer her doubts. ECF No. 16, at 14 n.26. To support his argument plaintiff cites <u>Baca v. Department of Health & Human Servs.</u>, which states that "[a]lthough a claimant has the burden of providing medical

evidence in proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues." 5 F.3d 476, 479-80 (10th Cir. 1993). However, the ALJ has no duty to "go to inordinate lengths to develop a claimant's case." Thompson v. Califano, 556 F.2d 616, 618 (1st Cir. 1977). In the instant case, the ALJ explicitly noted and explained the weights she gave to the various physicians, giving reasons for weighing certain physicians' opinions greater than others. (Tr. 24-25.) As discussed in this opinion, the ALJ explained that Dr. Jorge Irizarry's conclusions were conclusory and unsupported by medical testing, that Dr. Torres' opinion regarding plaintiff's shoulder limitations was inconsistent with other findings that he made, and that Dr. Romeu's opinion regarding limiting plaintiff's exposure to fumes and chemicals was not supported by medical testing, in addition to having been rendered prior to the date plaintiff alleged that his disability began. (Tr. 22, 24.) Moreover, plaintiff does not point to any additional evidence that went unexamined by the ALJ. Therefore, the plaintiff's argument that the ALJ failed in her duty to develop the record fails.

Finally, in the last page of his memorandum, plaintiff raises an argument that consists of a single sentence regarding the evidence as to his mental health: "It also has to be noted[] that when examined by Dr. Caro [on June 15, 2011], still panic attacks were occurring . . . but not presented to the vocational expert in some reasonable finding." ECF No. 16, at 18. As a preliminary matter, Dr. Caro's report does not indicate when he last experienced a panic attack or how frequently his panic attacks occurred. (Tr. 627-28.) Nevertheless, hypothetical questions need only "reasonably incorporate the disabilities recognized by the ALJ." Camacho v. Astrue, 978 F.Supp.2d 116, 122 (D.P.R. 2013) (citing Velez-Pantoja v. Astrue, 786 F.Supp.2d 464, 469 (D.P.R. 2010) (quoting Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994))). In reaching her determination regarding claimant's RFC, the ALJ gave great weight to Dr. Caro's opinion. (Tr.

24.) She clearly noted that claimant complained of panic attacks to Dr. Caro during the June 15, 2011 evaluation to which plaintiff refers. (Tr. 18.) In reaching claimant's RFC and delivering a hypothetical question to the VE, the ALJ indicated that claimant was limited to "simple and repetitive tasks with occasional contact with coworkers and the public." (Tr. 20; 57.) Although the ALJ did not specifically mention his panic attacks, this limitation adequately accounts for his history of panic attacks. See, e.g., Truster v. Astrue, No. 6: 10-3204-DGK-SSA, 2011 WL 4500539, at *3-4 (W.D. Mo. Sept. 27, 2011) (finding that ALJ did not err in omitting specific reference to the petitioner's panic attacks in hypothetical question to the VE, where the hypothetical incorporated the functional limitation that claimant could have only superficial contact with co-workers, supervisors, and the general public); Ambrose v. Astrue, Civ. No. 6: 09-cv-293-JMH, 2010 WL 3825477, at *4 (E.D. Ky. Sept. 24, 2010) (finding that limitation in hypothetical to VE that the individual was limited to simple, routine tasks and minimal interaction with the public, co-workers, and supervisors "clearly accounted for" history of panic attacks). In sum, the ALJ did not ignore substantial evidence regarding claimant's history of panic attacks.

V.     CONCLUSION

The ALJ did not fail to consider plaintiff's obesity in relation to his other impairments as is required by Social Security Regulation 02-1p. On the contrary, the ALJ explained that because of internally inconsistent reports, physicians' opinions of plaintiff's functional limitations were unsupported and thus were not fully incorporated into the RFC assessment. Even despite the reports' internal inconsistencies, the ALJ still incorporated some of the findings when assessing the plaintiff as capable of performing light work. The ALJ also did not err in failing to develop the record. Although the ALJ has a duty to develop the record, that duty does not require the ALJ

to go to inordinate lengths to develop a plaintiff's case. Thompson, 556 F.2d at 618. The ALJ thoroughly reviewed all the relevant medical evidence and explained her reasons for weighing physicians' evidence differently in her review of plaintiff's claim in determining the plaintiffs RFC. Finally, the ALJ did not ignore substantial evidence as to claimant's history of panic attacks.

Based on the foregoing analysis, the Commissioner's decision is hereby **AFFIRMED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 11th day of December, 2015.

s/Marcos E. López
U.S. Magistrate Judge
